IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MICHAEL MCGOWAN                                                              PLAINTIFF

V.                                                             NO. 4:16-CV-242-DMB-DAS

CHRISTOPHER EPPS, et al.                                                    DEFENDANTS

**ORDER**

Before the Court is the Report and Recommendation of United States Magistrate Judge David A. Sanders, Doc. #11, and Michael McGowan's objections to the same.

**I**
**Relevant Background and Procedural History**

On November 12, 2001, Michael McGowan began serving a fifteen-year sentence in the Mississippi Department of Corrections ("MDOC") for aggravated assault, simple assault-police officer, armed robbery, and burglary of an occupied dwelling. Doc #1 at 13. On August 24, 2007, MDOC's Commissioner requested permission from the Federal Bureau of Prisons ("BOP") to transfer McGowan to the "care and custody" of BOP. *Id*.[1] According to MDOC:

> In the past three years, Inmate … has received numerous major rule violation reports which threatened the safety, security, and orderly running of some of the most secure Mississippi Department of Corrections Facilities. These violations include but are not limited to: possessing sharpened instruments, setting of fires, possessing homemade handcuff keys, and attempting to assault staff with sharpened instruments. In addition, Inmate … has stabbed inmates, assaulted staff with sharpened instruments and threatened to kill MDOC employees.

*Id*. (redactions omitted). On November 2, 2007, BOP replied to MDOC, "Based on inmate McGowan's extreme violent behavior, and your need to remove him from your correctional system, we have agreed to accept him into the Bureau of Prisons. Accordingly, he will be housed

---

[1] Although the inmate's name is obscured on the filed copy of MDOC's letter to BOP, the Court presumes the letter pertains to McGowan since he filed it as an exhibit to his complaint. *See* Doc. #1 at 13.

at our United States penitentiary in Terre Haute, Indiana." *Id*. at 14.

By 2016, McGowan was incarcerated in the Maximum Security United States Penitentiary in Florence, Colorado ("ADMAX"), and sought to return to MDOC custody. *Id*. at 12. On August 4, 2016, MDOC informed McGowan that his "request to return to MDOC custody is … denied due to [his] institutional behavior on record." *Id*.

On or about October 12, 2016,[2] McGowan filed a "Complaint Challenging Conditions of Confinement" in the United States District Court for the Northern District of Mississippi. Doc. #1 at 11. In his complaint, McGowan seeks (1) a declaration that his constitutional rights are being violated; (2) an injunction preventing the defendants from keeping him in federal custody; (3) an order directing that he be returned to MDOC custody; and (4) compensatory and punitive damages. *Id*.

On August 22, 2017, United States Magistrate Judge David A. Sanders issued a Report and Recommendation concluding that most of McGowan's claims were untimely filed and that McGowan's "claims regarding the propriety of his transfer into federal custody, equal protection, retaliation, and denial of access to the court should be dismissed for failure to state a claim upon which relief could be granted." Doc. #11 at 15. However, Judge Sanders recommended that

---

[2] Under the prisoner mailbox rule, a pro se prisoner's complaint is deemed filed on the date it is handed to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988). McGowan's complaint is signed October 12, 2016. Doc. #1 at 13. However, the envelope in which his complaint was mailed is postmarked November 17, 2016, and the envelope bears a stamp indicating it was received by the Clerk of the Court on November 5, 2016. *Id*. at 71. It "is generally contrary to the Prison Mailbox Rule to use a later date—such as the date the U.S. Postal Service postmarked the envelope or the date the Court Clerk's Office stamped the envelope 'received'—as an incarcerated pro se party's filing date." *Wolff v. California*, 235 F. Supp. 3d 1127, 1129 n.1 (C.D. Cal. 2017). However, " a court need not treat a document as filed on the date it was purportedly submitted to prison staff for mailing, when the gap between that date and the postmark date is so long that the claimed submission date appears implausible." *Id*. Given the large discrepancy and irreconcilable conflict between the dates here, and the potential for prejudice to McGowan due to factors possibly beyond his control, the Court gives McGowan the benefit of the doubt in using a filing date of on or about October 12, 2016.

McGowan's "claims arising out of events occurring in other states should be dismissed without prejudice for want of proper venue." *Id*. The Report and Recommendation also states that, regarding the claim for denial of access to the courts, a "strike" under 28 U.S.C. §1915(g) should be assessed because by the time McGowan arrived at ADMAX, he had access to the legal materials he needed through a legal research contract between the facility and the University of Wisconsin Law School. *Id*. at 14–15.

On or about August 29, 2017, McGowan filed objections to the Report and Recommendation, Doc. #16, along with an "Order to Show Cause for An Preliminary Injunction & A Temporary Restraining Order," Doc. #13, which reasserts his grievances against MDOC and BOP. On or about September 11, 2017, McGowan filed supplemental objections to the Report and Recommendation. Doc. #17. On July 31, 2018, the Court ordered the parties to show cause why this case should not be transferred to the District of Colorado. Doc. #19. On or about August 15, 2018, McGowan objected to transfer of the case, arguing that the District of Colorado would not have jurisdiction over the Mississippi defendants he has sued. Doc. #23 at 2.

## II
## Standard

Where objections to a report and recommendation have been filed, a court must conduct a

> de novo review of those portions of the … report and recommendation to which [a] Defendant[] specifically raised objections. With respect to those portions of the report and recommendation to which no objections were raised, the Court need only satisfy itself that there is no plain error on the face of the record.

*Gauthier v. Union Pac. R.R. Co.*, 644 F.Supp.2d 824, 828 (E.D. Tex. 2009) (citing *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996)) (internal citation omitted). Accordingly, the Court will conduct a de novo review the Report and Recommendation where

McGowan has objected and review the remainder of the Report and Recommendation for plain error.

**III**
**Analysis**

McGowan claims that (1) MDOC officials retaliated against him by transferring him to BOP custody; (2) he should have received a due process hearing before his transfer; (3) his transfer violates the Equal Protection Clause; and (4) BOP's policy on access to state legal materials constitutes denial of access to the courts.

**A. Retaliation**

In his objections, McGowan asserts that MDOC officials had a "retaliatory motive" in transferring him to BOP's custody and that his transfer "was not a protection for staff, other prisoners nor for plaintiff well being [sic], it was done with evil intent and retaliation to cause plaintiff harm." Doc. #16 at 2, 5.

"Because no specified federal statute of limitations exists for § 1983 suits, federal courts borrow the forum state's general or residual personal-injury limitations period, which in Mississippi is three years." *Edmonds v. Oktibbeha Cty.*, 675 F.3d 911, 916 (5th Cir. 2012) (citing Miss. Code Ann. § 15-1-49). However, "[f]ederal law governs when a cause of action under § 1983 accrues." *Redburn v. City of Victoria*, 898 F.3d 486, 497 (5th Cir. 2018). Under federal law, "[t]he limitations period begins to run when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* (quotation marks omitted).

As McGowan filed this case on or about November 5, 2016, his claims arising before November 5, 2013, are barred by statute. Accordingly, McGowan's retaliation claim is barred

because it arose when he was transferred to BOP's custody in 2007.

Even if McGowan's retaliation claim was not barred by the statute of limitations, it would fail on the merits. McGowan fails to invoke a "specific constitutional right" that is required to support a retaliation claim. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Rather, McGowan asserts his transfer entailed disparate treatment because "plenty of Mississippi state prisoners whom [sic] have assaulted even murdered other prisoners, and assaulted Mississippi Department of Corrections staff and continue to do it, but [were] not transferred to a non-Mississippi … facility under extreme harsh conditions." Doc. #16 at 5. McGowan does not allege that his transfer was in retaliation for the exercise of a protected activity.[3] *See Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999) (noting that to successfully argue retaliatory transfer in violation of § 1983, inmate must prove desire to retaliate over that inmate's protected activity was actual motivating factor behind transfer). Moreover, even if McGowan's retaliation claim is construed as alleging favoritism in violation of the Equal Protection Clause of the Fourteenth Amendment, his claim fails because "[a]n inmate cannot base an equal protection challenge on a personal belief that he has been a victim of discrimination." *Marsalis v. Cain*, No. 12-799, 2014 WL 51215, at *8 (M.D. La. Jan. 7, 2014), *report and recommendation adopted*, No. 12-799, 2014 WL 407457 (M.D. La. Jan. 31, 2014) (citing *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)). Accordingly, McGowan's retaliation claim will be dismissed.

### B. Due Process

McGowan objects that he should have received a "due process hearing" before his transfer

---

[3] To the extent McGowan argues his transfer was in retaliation for assaulting MDOC staff, *see* Doc. #1 at 22, such conduct does not qualify as a protected activity.

to federal custody. Doc. # 16 at 2. As an initial matter, McGowan's due process claim fails because it was brought outside Mississippi's three-year general or residual personal injury limitations period discussed above. For the same reason McGowan's retaliation claim is barred, so too is his due process claim because it arose when he was transferred to BOP's custody in 2007.

To proceed on a procedural due process claim, a plaintiff "must demonstrate that the state has deprived [him] of a liberty or property interest" and that the "procedures relative to that deprivation" were insufficient. *Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012).

> When a prisoner is transferred without his consent for behavior he is alleged to have displayed while incarcerated, and this transfer constitutes a "serious loss" so as to involve the deprivation of a liberty or property interest, the prisoner must be accorded sufficient elements of due process to allow him to refute the facts upon which his transfer is based and to present his reasons for not being transferred before an impartial decision maker.

*U. S. ex rel. Gereau v. Henderson*, 526 F.2d 889, 895 (5th Cir. 1976). A "serious loss" from a transfer

> result[s] from various combinations of factors, including adverse effect on chances for parole, increased difficulty of visits from family and friends, the difficulties of adjustment to a new social environment, the temporary placement in 'administrative segregation' in the receiving institution, the interruption of vocational and rehabilitation programs, increased difficulty of communicating with counsel, lost records and personal belongings, and the stigma resulting from placing the transfer on the prisoner's record. The emerging pattern is that transfers resulting from inmate prison conduct usually impose a serious loss on the transferred inmate.

*Id.*[4]

---

[4] Though *Henderson* is a seldom-cited opinion issued in the context of "uncertainty" regarding "recent Supreme Court guidelines," and uses a "serious loss" rather than a "protected liberty interest" analysis, it is nevertheless still binding law. Decisions after *Henderson* from other circuits, utilizing a "protected liberty interest" analysis, have determined that plaintiffs like McGowan lack the right to a due process hearing before transfer. *See Brown v. Smith*, 580 F. Supp. 1576, 1578 (M.D. Pa. 1984) ("[L]egal authority recognizes that the transfer itself was permissible and that state prisoners may be transferred into federal custody outside the state of conviction without bringing into play any protected liberty interest."); *Kivela v. U.S. Atty. Gen.*, 523 F. Supp. 1321, 1325–26 (S.D.N.Y. 1981), *aff'd sub nom. Kivela v. U.S. Atty. Gen.*, 688 F.2d 815 (2d Cir. 1982) ("Prison officials have discretion to effect a transfer of a prisoner from his place of confinement for whatever reason or for no reason and the exercise of that discretion implicates

McGowan's due process claim would fail on the merits as McGowan is unable to demonstrate that, under *Henderson*, he sustained a "serious loss" of a liberty or property interest such that he would be entitled to a "due process hearing" to contest his transfer. While McGowan's transfer out of Mississippi required adjusting to a new social environment and made facilitating visits from family and friends difficult, McGowan has not offered further considerations that would make his transfer, on the whole, a "serious loss." Accordingly, McGowan's due process claim will be dismissed with prejudice.

### C. Equal Protection

McGowan, suing under 42 U.S.C. § 1983, objects that his transfer into federal custody violates the Equal Protection Clause because other inmates, who had equal or greater records of institutional violence, were not transferred to federal custody as he was. Doc. #16 at 2. McGowan's equal protection claim fails because it was brought outside Mississippi's three- year general or residual personal injury limitations period. Like his claims above, McGowan's equal protection claim arose when he was transferred to BOP's custody in 2007.

Regardless, to establish an equal protection violation, a plaintiff must show either that "a state actor intentionally discriminated against him because of membership in a protected class" or that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins. -- Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (quotation marks and alterations omitted). Even if McGowan's equal protection claim was not barred by the statute of limitations, it would fail on the merits because McGowan there is no evidence that he is a member of a protected class and that

---

neither the due process or equal protection claims.").

the government intentionally discriminated against him because of his membership in that class, or that he was intentionally treated differently from others similarly situated without a rational basis for the difference in treatment. McGowan merely offers a conclusory argument that other prisoners, who he believed had worse disciplinary records than his, were not transferred or placed in as harsh conditions as he was. Under these circumstances, his equal protection claim must be dismissed.

### D. Denial of Access to Courts

McGowan's complaint indicates that in 2010, he submitted an "Informal Resolution Attempt" requesting access to Mississippi state legal materials to appeal his conviction—which request was denied by BOP. Doc. #1 at 15–16. In 2012, McGowan wrote former MDOC Commissioner Epps requesting access to Mississippi state legal materials. *Id*. at 27. McGowan filed several complaints regarding his access to Mississippi state legal materials with BOP over the course of 2015 and 2016. *Id*. at 19, 21, 30–32

McGowan objects that BOP's policy of requiring inmates to access state legal materials through the state of conviction constitutes denial of access to the courts on the part of BOP and MDOC. Doc. #16 at 3. He also objects that ADMAX's policy of requiring prisoners seeking state legal materials to acquire them through the mail also denied him access to the courts because he was "indigent" and "cannot afford to pay postage everytime [he] want[s] a Mississippi case."[5]

---

[5] McGowan levels a new allegation in his "supplement[al]" objections to the Report and Recommendation—that the monetary fine BOP imposes as punishment for rule infractions encumbers prison accounts that do not have sufficient funds to pay the fine. Doc. #17 at 1. He argues that such policy is a form of discipline in that BOP denies inmates access to the courts because the policy prevents such inmates from purchasing postage to contact the courts. Such claims are not before the Court because they are not included in McGowan's complaint; moreover, venue for such claims is mislaid in the Northern District of Mississippi. *See White v. Jindal*, No. 3:11-cv-0671, 2011 WL 4382019, at *3 (W.D. La. Aug. 22, 2011), *report and recommendation adopted*, No. 3:11-cv-0671, 2011 WL 4382195, at *1 (W.D. La. Sept. 20, 2011) (claims related to conditions of confinement in prison must be filed in federal judicial district where prison is located).

*Id*.

When a federal inmate challenges the conditions of confinement, the proper venue is the district of confinement and "the proper respondent … is the prisoner's immediate custodian." *See White v. Jindal*, No. 3:11-cv-0671, 2011 WL 4382019, at *3 (W.D. La. Aug. 22, 2011), *report and recommendation adopted*, No. 3:11-cv-0671, 2011 WL 4382195, at *1 (W.D. La. Sept. 20, 2011) (claims related to conditions of confinement in prison located in Middle District of Louisiana must be filed there). In the Report and Recommendation, Judge Sanders determined that McGowan's denial of access complaints from 2010 and 2012 were outside of the statutory period because they occurred before November 2013 but that his complaints dated December 22, 2015, December 31, 2015, and February 9, 2016, although falling within the limitations period, stem from the conduct of BOP employees in Colorado—not in Mississippi—who were not named in this suit. Doc. #11 at 12–13. Judge Sanders thus recommended that McGowan's claims as to the three grievances from 2015 and 2016 be dismissed without prejudice to his ability to raise them in the proper venue. *Id*. at 13.

Since McGowan was transferred to BOP custody in 2007, and his earliest denial of access claim relates to events that transpired in 2010, *see* Doc.#1 at 17, when he was outside the Northern District of Mississippi, the Court concludes that all of McGowan's conditions of confinement claims should be dismissed without prejudice so that McGowan may refile them in the proper venue—which may have a longer statutory limitations period than Mississippi.

## IV
## Conclusion

For the reasons above:

1.  McGowan's objections to the Report and Recommendation are overruled;

2. The Report and Recommendation [11] is **ADOPTED in Part** as the opinion of the Court; it is **REJECTED in Part** to the extent it recommended dismissal of some of McGowan's claims of denial of access to the courts with prejudice;[6] and

3. McGowan's retaliation, due process, and equal protection claims are **DISMISSED with prejudice**; McGowan's denial of access to the courts claims are **DISMISSED without prejudice** given that venue is not proper in the Northern District of Mississippi.

**SO ORDERED**, this 21st day of September, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[6] In discussing McGowan's denial of access claims, the Report and Recommendation recommended that McGowan's "grievances dated December 22, 2015, December 31, 2015, and February 9, 2016" be dismissed without prejudice as arising before the limitations period but that claims arising before December 5, 2013, be barred. Doc. #11 at 5, 12–13. However, the Report and Recommendation concluded by recommending that "claims arising out of events occurring in other states should be dismissed without prejudice for want of proper venue" regardless of accrual date. *Id*. at 15. Given this conflict, the Court presumes the Report and Recommendation merely recommended that McGowan's claims arising in 2015 and 2016 be dismissed without prejudice and that the remainder of his denial of access claims be dismissed with prejudice.